The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and conclude as matters of law the following, which were agreed upon by the parties at the hearing and in a Pre-trial Agreement as
STIPULATIONS
1. At all times relevant hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. National Union Fire Insurance Company was the carrier on the risk.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 13 May 1991.
5. Plaintiff was paid temporary total disability benefits from 14 May 1991 through 11 August 1991.
6. Plaintiff returned to work for defendant-employer on or about 12 August 1991.
7. Plaintiff was paid $250.00 per week in workers' compensation benefits until 18 August 1991.
8. Plaintiff received twenty-six weeks of unemployment compensation, at an amount to be documented, for which defendants are entitled to a credit pursuant to N.C. Gen. Stat. § 97-42.1.
9. The records concerning plaintiff from the following medical providers are stipulated into evidence:
David W. Love, M.D.
Robert C. Gunther, M.D.
Haywood County Hospital
St. Joseph's Hospital
David O. Lincoln, M.D.
James J. Hoski, M.D.
* * * * * * * * * * * * * *
The Full Commission rejects the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. At the time of his injury by accident plaintiff was forty three years old and had completed the sixth grade. His prior work experience consisted of truck driving and construction jobs. Plaintiff's job with defendant-employer was as a working foreman of a construction crew. This job was not limited to supervisory functions and required some physical labor.
2. Plaintiff sustained an admittedly compensable injury as a direct result of a specific traumatic incident of the work assigned arising out of and in the course of his employment on 13 May 1991 when while picking up a bag of cement he immediately felt pain in his back. Plaintiff reported his injury to defendant-employer and the next day visited Dr. David W. Love, his family doctor, complaining of back and right leg pain.
3. Dr. Love referred plaintiff to Dr. David O. Lincoln, an orthopaedic surgeon, to treat plaintiff's continuing complaints of back and leg pain. Plaintiff's first visit with Dr. Lincoln was on 27 May 1991. Plaintiff complained of bilateral radicular leg pain with paresthesias to his feet, with more pain on the right side than the left side. Dr. Lincoln's review of plaintiff's x-rays and CT scan found a probable calcified herniated disc at L5-S1, with significant degenerative changes and spinal stenosis. Dr. Lincoln did not think plaintiff was a surgical candidate and treated plaintiff conservatively with physical therapy and medication, and advised him not to return to work. By 8 August 1991 plaintiff reported that he was improved and Dr. Lincoln gave him a return to work statement for light duty work effective 12 August 1991. From September 1991 through October 1991 plaintiff performed light duty work for defendant-employer and did reasonably well with intermittent back and leg pain, but by 17 December 1991 plaintiff complained of increasing radicular left leg pain, especially with certain activity. An MRI was taken on 23 December 1991 that showed evidence of degenerative disc disease but no disc herniation. Dr. Lincoln still did not feel that plaintiff was a surgical candidate and recommended continued conservative treatment. By 10 March 1992 despite conservative treatment plaintiff did not improve, and Dr. Lincoln felt that he was totally incapable of heavy labor activities as of that date. By July 1992 plaintiff still had not improved and continued to complain of low back and leg pain. Dr. Lincoln therefore referred plaintiff to Dr. James Joseph Hoski, an orthopaedic spine surgeon.
4. Dr. Lincoln's final diagnosis was pre-existing degenerative disease of the spine aggravated by his on the job accident. In a letter dated 9 March 1994 Dr. Lincoln opined that there was a direct relationship between the symptoms plaintiff was experiencing during the time he treated plaintiff and his injury of May 1991.
5. Plaintiff's first visit with Dr. Hoski was on 14 July 1992, where he related to Dr. Hoski his history of an on the job injury of May 1991 and complained of back and lower extremity pain, left greater than right. Dr. Hoski examined an MRI of plaintiff's back which showed degenerative disc disease at L5-S1 with a central herniation. Dr. Hoski recommended that plaintiff enroll in a physical therapy program with the proviso that if his pain did not improve, plaintiff should undergo a discogram. Plaintiff's pain did not improve with physical therapy. Therefore, a discogram was performed which confirmed the source of plaintiff's pain at the L5-S1 disc. Thereafter, Dr. Hoski performed anterior interbody fusion surgery on plaintiff on 23 October 1992, and regularly followed plaintiff's progress until February 1993.
6. After a break in treatment from February 1993 until March 1994, Dr. Hoski ordered a functional capacity evaluation for plaintiff. At the evaluation on 13 April 1994 plaintiff demonstrated functional capabilities in the medium-heavy to heavy physical demand level. The evaluator suggested that plaintiff might benefit from a program to restore range of movement and cardiovascular fitness, and to train him in self-regulatory skills for pain management. In a letter dated 7 June 1994 Dr. Hoski wrote that plaintiff was unable to work from 14 July 1992 through 25 March 1994, and he was authorized to be out of work during that time.
7. Dr. Hoski opined that he did not consider it medically significant that plaintiff initially complained of right lower extremity pain after his accident, which changed to left lower extremity pain by the time of his treatment of plaintiff, noting that such shifting of pain symptoms, while unusual, was not medically impossible. He related plaintiff's back and lower extremity pain and resulting surgery to plaintiff's on the job injury of May 1991, and on 2 November 1995 rated plaintiff with a twenty-five percent (25%) impairment to his back. He opined that plaintiff would no longer be able to work in construction-type jobs, except at a supervisory level, and suggested that plaintiff could benefit from vocational rehabilitation.
8. On 24 October 1991 plaintiff was laid off from his job with defendant-employer while still on light duty status. Plaintiff was laid off because defendant-employer's work requirements were beginning to change over from sewer work that plaintiff was skilled in performing to sewer work that plaintiff was less skilled in performing. Defendant-employer arranged for plaintiff to receive unemployment insurance benefits and plaintiff subsequently received twenty-six weeks of unemployment insurance benefits at the rate of $242.00 per week. By the time plaintiff's unemployment insurance benefits ceased in April 1992, Dr. Lincoln had indicated that plaintiff should not return to work due to his continued pain complaints.
9. The evidence of record fails to show that defendant-employer made available any other suitable employment for plaintiff after he was laid off on 24 October 1991. Such suitable employment would be that which would allow plaintiff to work within his physical and vocational limitations.
10. The evidence of record fails to show that defendants identified any other suitable employment available that plaintiff was capable of obtaining, taking into account plaintiff's physical and vocational limitations.
11. Plaintiff attempted unsuccessfully to return to work with another employer in or around May 1992, but there is insufficient evidence of record to determine how long plaintiff may have worked, or what wages were earned, if any.
12. As a result of the compensable injury by accident of 13 May 1991 and the physical restrictions placed on plaintiff due to his injury, his unsuccessful attempt to return to the job market notwithstanding, plaintiff has been incapable or earning his pre-injury wages with the defendant-employer or any other employer from 24 October 1992 to the present. Defendants are entitled to a credit for twenty-six weeks of unemployment compensation benefits paid to plaintiff.
* * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. On 13 May 1991 plaintiff sustained an admittedly compensable injury as a direct result of a specific traumatic incident of the work assigned, arising out of and in the course of his employment with defendant-employer. This injury aggravated plaintiff's pre-existing back problem and ultimately required surgery. N.C. Gen. Stat. § 97-2(6).
2. As a result of his 13 May 1991 back injury plaintiff was incapable of earning wages in any employment from 14 May 1991 through 11 August 1991. Plaintiff has been paid temporary total disability compensation during this period. N.C. Gen. Stat. § 97-29.
3. Plaintiff returned to light duty work with defendant-employer on 12 August 1991 earning the same or greater wages and was subsequently laid-off on 24 October 1991 while still under medical restrictions. Plaintiff has been totally incapable of earning the same or greater wages in the same or any other employment since that date. N.C. Gen. Stat. § 97-2(9).
4. Plaintiff is therefore entitled to payment by defendants of temporary total disability compensation at the rate of $250.00 per week from 24 October 1991 through the date of hearing and continuing until plaintiff returns to work earning the same or greater wages or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief and/or will tend to less plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a credit for twenty-six weeks of unemployment insurance benefits paid to plaintiff. N.C. Gen. Stat. § 97-42.1.
* * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to counsel fees, defendants shall pay to plaintiff temporary total disability compensation benefits at the rate of $250.00 per week from 24 October 1991 through the date of the hearing and continuing until plaintiff returns to work earning the same or greater wages or until further order of the Commission. Those amounts which have accrued shall be paid in a lump sum.
2. Defendants are due a credit of $6,292.00 for twenty-six weeks of unemployment insurance benefits paid to plaintiff.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident of 13 May 1991 when bills for same have been submitted and approved through procedures adopted by the Commission.
4. A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel and thereafter, plaintiff's counsel shall receive every fourth check. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to his counsel.
5. Defendants shall pay the costs due this Commission.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER
BSB:be